Allen Wayne **COUCH**, Respondent,

v.

Cynthia M. **COUCH**, Appellant.

No. WD 54763.

Missouri Court of Appeals,
Western District.

Nov. 3, 1998.

---

Brenda Wall–Swedberg, Kirksville, for Appellant.

Allan D. Seidel, Trenton, for Respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

HOWARD, Judge.

Cynthia M. Couch appeals from the trial court's judgment awarding custody of a minor child, G.C., to Allen W. Couch. Appellant raises three points on appeal. First, she

contends that the trial court abused its discretion in denying her request for a guardian ad litem for the minor child because the evidence and pleadings contained allegations of abuse and domestic violence in the home. Second, she claims that the trial court erred in awarding physical custody of the minor child to Respondent without making specific findings of fact and conclusions of law to show that the custody and visitation arrangement ordered by the court best protects the child and the parent. Third, she contends that the trial court's award of physical custody of the minor child to Respondent was an abuse of discretion, against the weight of the evidence, not supported by substantial evidence, based on an erroneous declaration and application of the law, and not in the best interest of the child.

Affirmed.

## Facts

A brief recitation of the facts is given here. The facts will be further developed as warranted by the points on appeal.

Allen W. Couch and Cynthia M. Couch were married on July 20, 1991. One child was born of the marriage, G.C., born on December 29, 1993. Cynthia Couch has one child from a previous marriage, Kimberly Reger, of whom she has physical custody.

On August 10, 1996, Appellant and Respondent separated following a physical altercation during which Appellant was pushed and broke her collarbone. On August 12, 1996, Respondent filed his petition for dissolution of marriage. At the time of the custody and dissolution hearing, Respondent had temporary custody of G.C., and Appellant had visitation every other weekend. The trial court awarded the parties joint legal custody of G.C. and primary physical custody to Respondent, with visitation for Appellant. This appeal of the trial court's custody award followed.

## Point I

■ The first point on appeal is that the trial court abused its discretion in denying Appellant's request for a guardian ad litem for G.C. because the evidence and pleadings contained allegations of abuse and domestic violence in the home.

Section 452.423.1 [1] provides as follows:

In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

Section 210.110 defines "abuse" as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse."

Respondent's petition for dissolution of marriage, filed on August 12, 1996, contained no allegations of child abuse or neglect. Likewise, Appellant's answer did not contain any such allegations. Appellant's motion for temporary custody, filed on October 8, 1996, contained a statement that Respondent had abused Appellant, but it did not contain any allegations that G.C. had been abused. Likewise, Respondent's response to the motion for temporary custody did not contain any allegations that G.C. had been abused. Respondent's motion merely contained the vague statement that Appellant was "engaging in immoral and improper conduct prior to and during the time of separation of the parties, and that the minor child should not be subjected to the exposure to said conduct." On October 29, 1996, there was a hearing on the motion for temporary custody. No allegations of child abuse were made at that hearing.

Respondent testified at the custody hearing that G.C. started exhibiting strange sexual behaviors in March 1997. On May 2, 1997, Respondent and his paramour, Sharon Cox, made a hotline call and reported some alleged abuse of G.C. by Appellant. After an investigation, the Division of Family Services ("DFS") found that the allegations were un-

---

1. All statutory references are to RSMo 1994 un-     less otherwise indicated.

substantiated. Respondent testified that he was aware that Appellant was attempting to schedule a psychological evaluation and physical examination of G.C. at the time Sharon Cox made the hotline call.

On June 19, 1997, Appellant filed a motion for continuance. The motion for continuance stated that a hotline call had been made and that Appellant was trying to schedule a psychological evaluation for G.C. The motion also stated that depending on the evaluation, a guardian ad litem may need to be appointed for G.C. A hearing was held on the motion for continuance on June 25, 1997. At the hearing, the court was made aware of the nature of the allegations made in the hotline call and that the allegations were found to be unsubstantiated by DFS.

On June 30, 1997, a hearing was held concerning custody and dissolution of the marriage. Appellant renewed her motion for continuance. Appellant's counsel made the following statement in support of her renewed motion:

> Based upon the allegations in a hot line that was entered in May 2nd of 1997 and some activities by the child prior to that date, we were in the process of trying to schedule a psychological evaluation and a physical evaluation of the child. The hot line got intervened between the time that we were trying, and they were unable to get a psychological evaluation either. Based upon the seriousness of the allegations we feel that it requires a psychological evaluation and that the alleged abuse would require the appointment of a Guardian Ad-litem and we have requested that also.

When the court asked Appellant's counsel the basis for the psychological evaluation, she responded as follows:

> [T]he child prior to the hot line investigation being conducted had exhibited some strange knowledge or I guess an advanced knowledge of sexual behaviors that my client thought were inappropriate for a child of that age. We had scheduled a physical examination, and I called a couple psychologists about a psychological evaluation of the child to see if the psychologist or psychiatrist could come up with a rea-

son of why he had advanced sexual knowledge. We believe the other party heard of this, and we requested to have the child— early on May 1st my client requested to have the child early, and we had made a physical examination appointment. The father refused. And then on May 2nd, the very date of our appointment, the hot line was called in. We believe that the hot line was called in in retaliation and because the father suspected that we were on to possible behaviors that he had learned in the father's home so in order to throw them off the call was made against my client.

Appellant's counsel explained that DFS said that it would not investigate Respondent unless a hotline call was made. Appellant "didn't think that would be appropriate, that it would be best served to investigate it through this proceeding and therefore none was made." The court denied the motion for continuance, but indicated that it would order a psychological evaluation if it found it necessary to do so.

■ The question of whether the mandatory appointment provision of § 452.423.1 is triggered by the introduction of evidence at trial, absent express allegations of child abuse or neglect in the pleadings, was addressed in *Rombach v. Rombach,* 867 S.W.2d 500 (Mo. banc 1993). In *Rombach,* the Missouri Supreme Court held that "[t]he mandatory appointment of a guardian ad litem pursuant to § 452.423.1 is triggered only by an allegation of child abuse expressly stated in a pleading and not by the mere introduction of evidence at trial." *Rombach,* 867 S.W.2d at 503; *accord H.J.I. by J.M.I. v. M.E.C.,* 961 S.W.2d 108, 114 (Mo.App. W.D.1998). The court reasoned that if mere evidence of abuse or neglect were the test for whether the court should be required to appoint a guardian ad litem, "the trial court would be left with no discretion to ferret out cases where some evidence might arguably exist going to the issues of abuse or neglect, but the evidence is too ambiguous, vague, speculative or remote to justify such an action." *Rombach, id.* However, where sufficient evidence of child abuse or neglect is introduced at trial, the court should, either upon motion of a party or *sua sponte,* order that the pleadings

be amended to conform to the evidence and then appoint a guardian ad litem. *Rombach,* 867 S.W.2d at 504; *H.J.I.,* 961 S.W.2d at 114.

In *H.J.I.,* the father's petition alleged neither child abuse nor child neglect by the mother, and the father did not request to amend his petition to allege either child abuse or neglect. *H.J.I., id.* The issue, therefore, was whether the evidence presented at the hearing established child abuse or neglect by the mother that would require the court to *sua sponte* order the pleadings to conform to the evidence and appoint a guardian ad litem. *Id.* This court found that the trial court did not err in not appointing a guardian ad litem. *Id.* at 115.

In the present case, the only allegations of actual child abuse were the subject of a hotline call made by Respondent against Appellant. Those allegations were found to be unsubstantiated by DFS before the custody hearing. Although Appellant claimed that G.C. had been exhibiting inappropriate sexual behavior, Appellant did not make any specific allegations of sexual abuse; she merely contended that the hotline call was made in retaliation for "possible behaviors he had learned in the father's home." Appellant did not request that the court order a physical examination or psychological evaluation of G.C., and she did not make a hotline call alleging abuse by Respondent, even though he had been exhibiting the strange behavior since March 1997. In addition, at no time did Appellant amend her petition to allege child abuse by Respondent. We will not speculate as to why Appellant did not do these things if she suspected abuse. It suffices to state that the allegations of abuse against Appellant, which were specifically unsubstantiated by DFS before the trial court was made aware of the allegations, were not sufficient to trigger the court's mandatory duty to appoint a guardian ad litem. In addition, the evidence that G.C. was exhibiting strange sexual behaviors, without any direct allegations of abuse, was insufficient to trigger the court's mandatory duty.

Because there were no allegations of abuse or neglect in the pleadings and there was no sufficient evidence of child abuse or neglect by either parent, it was within the trial

court's discretion whether to appoint a guardian ad litem. *See Mills v. Mills,* 939 S.W.2d 72, 74 (Mo.App. W.D.1997). We find that the trial court did not abuse its discretion in this case. Point denied.

### Point II

The second point on appeal is that the trial court erred in awarding physical custody of the minor child to Respondent without making specific findings of fact and conclusions of law to show that the custody and visitation arrangement ordered by the court best protects the child and the parent, as required by § 452.375.2(5), in that the evidence established and the court found that domestic violence had occurred by Respondent against Appellant.

Section 452.375, in pertinent part, provides as follows:

2. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including: ... (5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

The trial court made the following relevant findings in its judgment:

The Court finds that there has been domestic violence by the [Respondent] directed toward the [Appellant], that no evidence was presented that there was domestic violence directed toward [G.C.] or Kimberly Reger, [Appellant's] daughter by a previous relationship, and that no orders are necessary to protect the child, [G.C.], from domestic violation [sic], it is therefore found that the best interests of the minor child named herein would be served by

placing him in the joint legal custody of the parties with primary physical custody being placed with [Respondent] and the [Appellant] ordered to pay child support as hereinafter set forth.

We find that § 452.375.2(5) does not apply in this case because Appellant has failed to establish, or even allege, the requisite "pattern of domestic violence."[2] *See Hamilton v. Hamilton*, 886 S.W.2d 711, 715 (Mo.App. W.D.1994) (two incidents of domestic violence in 20–year marriage not a pattern of domestic violence where mother failed to show that incidents were representative of father's typical behavior).

■■■ While we find that § 452.375.12, RSMo 1997 Supp. can require specific findings of fact concerning domestic violence, Appellant does not cite this section in her point on appeal and she does not contend anywhere in her argument that this section is applicable. Therefore, we need not consider this statute's applicability to the present case. *See Hamilton*, 886 S.W.2d at 715 n. 4. However, considering the totality of the circumstances, and the court's specific finding that no orders were necessary to protect the child, we see no manifest injustice to the child's interests. Point denied.

### Point III

■■■ The third point on appeal is that the trial court erred in awarding physical custody of the parties' minor child to Respondent because to do so was an abuse of discretion, against the weight of the evidence, not supported by substantial evidence, based on an erroneous declaration and application of the law, and not in the best interest of the child. Appellant argues that the evidence clearly established that Respondent had a history of abusive behavior; Respondent had subjected the child to a person whose relationship with the child had significantly adversely affected the child's best interest; the award of custody separates the minor child from his sibling; Respondent had interfered with Appellant's visitation rights prior to the hearing; and Respondent had not been caring for the

child, but had turned the child's care over to his family members, showing an unwillingness to actively perform his function as father and custodial parent.

■■■ The trial court determines what is the best interest of the child in a child custody dispute, and the court of appeals determines whether the record contains sufficient evidence to support the trial court's assessment. *H.J.I.*, 961 S.W.2d at 115. We must affirm the decision of the trial court unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Horton v. Horton*, 961 S.W.2d 67, 69 (Mo. App. W.D.1997). We give greater deference to the trial court's decision in child custody decisions than in other matters. *Id.* We defer to the trial court on questions of credibility of witnesses and choosing between conflicting evidence. *In Interest of Hill*, 937 S.W.2d 384, 388 (Mo.App. W.D.1997). We accept as true evidence and inferences from evidence that are favorable to the trial court's judgment and disregard all contrary evidence. *H.J.I.*, 961 S.W.2d at 116.

Section 452.375.2 provides as follows:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive

---

**2.** Appellant alleged in her motion for temporary custody that Respondent has "an alcohol problem and propensity toward violence." However, we find that a propensity toward violence is not the same as actually engaging in a pattern of violence.

parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

Concerning the domestic violence, it is clear that the trial court considered this factor and found that there had been no domestic violence committed by Respondent toward G.C. and that G.C. did not need to be protected from Respondent. We find that the trial court did not abuse its discretion in making this finding.

Appellant claims that Respondent subjected G.C. to Sharon Cox, who adversely affected G.C.'s best interest. While Respondent conceded that G.C.'s unusual behavior started around the time Sharon Cox began living with Respondent, we find that there was no evidence that Sharon Cox was the cause of the behavior. Furthermore, while Appellant claims that two of the witnesses changed their stories concerning Sharon Cox, we defer to the trial court's assessment of the witnesses' credibility.

We agree with Respondent that the third factor, the interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests, plays a particularly important role in the present case because of G.C.'s relationship with his paternal grandmother. Respondent's mother is the primary caretaker of G.C. Because of the long hours both parents work and the proximity of the grandmother's residence to Respondent's residence, this factor weighs in favor of Respondent. While separation from his sibling is an unfortunate consequence of the custody arrangement, G.C. will still be able to maintain a relationship with her. Furthermore, in light of all the circumstances of this case, the separation is not an overriding factor that requires reversal of the trial court's order.

Appellant alleges that Respondent interfered with her visitation rights by maliciously making the hotline call against her. In light of our standard of review, we find that the trial court did not abuse its discretion in finding no malice or intent to interfere with Appellant's visitation rights in this case.

The evidence indicates that Respondent has a good relationship with G.C., and that Respondent is willing and able to take care of G.C. Therefore, we find that the trial court did not err in making its custody award. Point denied.

The judgment of the trial court is affirmed.

All concur.